Steven Ray STUCKER and Frances Dawn Stucker, Husband and Wife, Plaintiffs–Appellants,

v.

Ernest C. ROSE, M.D., Defendant–Respondent.

No. 20824.

Missouri Court of Appeals, Southern District, Division Two.

June 30, 1997.

Motion for Rehearing or Transfer Denied July 22, 1997.

Application to Transfer Denied Aug. 19, 1997.

Mark Belz, Belz & Jones, P.C., St. Louis, for plaintiffs–appellants.

Phillip L. Willman, Robyn G. Fox, Catherine M. Vale, Moser and Marsalek, St. Louis, for defendant–respondent.

SHRUM, Judge.

In this medical malpractice suit, a jury found for Ernest C. Rose, M.D. (Defendant). Plaintiffs appeal, charging the trial court erred when it did not grant Plaintiffs' requests for a mistrial based on defense counsel's allegedly prejudicial misconduct during voir dire. We affirm.[1]

Steven injured his left hand in February 1992 and surgical treatment was indicated. Defendant, an anesthesiologist, and John Hansmann (Hansmann), a certified registered nurse anesthetist, administered an axillary block to Steven, thereby providing local anesthesia to his left arm. Later, Plaintiffs sued Defendant andHansmann, alleging that they injured Steven through their negligence in administering the axillary block.

During voir dire by John Oliver (Oliver), Hansmann's defense lawyer, the following occurred:

[MR. OLIVER] "Mr. Belz [Plaintiffs' lawyer] was introduced to you. He is from St. Louis. Mrs. Carroll, I know you indicated that you had a lawyer from St. Louis, but I know down here we got cable T.V. ads and St. Louis channels. Would any of you answer a T.V. ad for a St. Louis lawyer, go to a St. Louis lawyer just because they are on T.V.?

MR. BELZ: "Object. I would like to make a record and make an objection later.

THE COURT: "Sustained."

---

1. This suit was filed by Steven Ray Stucker and Frances Dawn Stucker. Collectively we call them "Plaintiffs;" when necessary to refer to Plaintiffs separately we call them Steven and Frances.

Thereon, Oliver asked two questions regarding the jury's ability to follow the court's instructions. Then, he made this inquiry:

MR. OLIVER: "Any of you ever go to Arizona or Colorado for a doctor? Anybody? You will agree with me that we have got pretty good doctors right here. If you agree that we have pretty good doctors right here—

MR. BELZ: "Object.

THE COURT: "Sustained. I think you are getting off a little bit of the normal voir dire questions, Mr. Oliver."

After voir dire, during an in-chamber jury selection conference, Plaintiffs moved for a mistrial because of Oliver's comments. Plaintiffs claimed that his remarks prevented them from getting a fair trial. The court denied Plaintiffs' motion.

At the end of the first day of trial, Plaintiffs dismissed their suit against Hansmann. When the case was finally submitted to the jury, it was only against Defendant. The jury found for Defendant and Plaintiffs appeal.

Plaintiffs present three points on appeal. Each point complains of the trial court's refusal to grant a mistrial because of Oliver's comments during voir dire; consequently, we consider them together.

In urging reversal, Plaintiffs rely on *DeLaporte v. Robey Bldg. Supply, Inc.*, 812 S.W.2d 526 (Mo.App.1991), *Gilbert v. K.T.I. Inc.*, 765 S.W.2d 289 (Mo.App.1988), and *Snell v. Overfelt*, 307 S.W.2d 716 (Mo.App.1957). These cases hold that remarks by counsel made for the purpose of arousing prejudice are not within the scope of legitimate argument and are improper. Additionally, Plaintiffs cite *Welch v. Sheley*, 443 S.W.2d 110 (Mo.1969), where Judge Eager wrote: "[I]t is ... highly improper for counsel to disclose to a jury extrinsic matters which, to their knowledge, will tend to create prejudice against the other party; and it is immaterial whether this is done on voir dire, in evidence, or in argument." *Id.* at 117.

Plaintiffs contend that application of these rules to this case mandates reversal. They argue that the sole purpose of Oliver's remarks was to arouse prejudice against Plaintiffs, that his comments were not within the scope of legitimate argument, and that what Oliver said to the jury was so improper and prejudicial as to require reversal. Continuing, Plaintiffs characterize Oliver's comments as being nothing more than an appeal to "local prejudice[,]" specifically "prejudices against lawyers from the big city, and against lawyers who advertise, and against clients who answer their ads[,]" and against plaintiffs who use "out of state doctors." Plaintiffs also claim that the challenged comments demeaned their lawyer and were designed to make the jury believe Plaintiffs "had to go a long way to find a greedy lawyer who was willing to take this questionable case." Finally, they argue that even if we find that no single point constitutes grounds for reversal, we should order a new trial due to the cumulative effect of both remarks. *See DeLaporte*, 812 S.W.2d at 536[31].

Defendant responds by first arguing that the motion for mistrial was untimely; thus, the trial court did not err in denying the motion. We agree. A request for mistrial "comes too late where it is not requested at the time the objection is made." *McMillin v. Union Elec. Co.*, 820 S.W.2d 352, 355[4] (Mo.App.1991). The *McMillin* court explained:

"The rationale here is the same as where a party fails to make a timely objection to statements made by counsel or witnesses.... [A] party [cannot] wait to evaluate the impact of the evidence on the jury or delay for any other strategic reason, without giving a clear intention to waive or abandon the request. If the objection is not made at the time of the incident giving rise to the objection, the objection may be deemed waived or abandoned.... Similarly, failure to make a timely request for further relief when an objection has been sustained may be deemed a waiver or abandonment....

"The request here for a mistrial was not made until the end of defendant's closing argument. The motion was denied. The bench conference which took place when the objection was made was extended and did not appear rushed. There was suffi-

cient opportunity for the attorney to have made his request at the bench at that time. His failure to request a mistrial at the time of his objection may be deemed a waiver or abandonment of that remedy." (citations omitted).

*Id.* at 355[6–7].

In this case, Plaintiffs' counsel did not ask for a bench conference nor did he seek a mistrial when Oliver made the objectionable remarks. Instead, he merely stated: "Object. I would like to make a record and make an objection later." It was not until after voir dire was completed, a recess was declared for a conference on jury selection, and the trial judge and lawyers were in chambers engaged in the jury selection process, that Plaintiffs' counsel first sought remedial action. There is no indication in the record that Plaintiffs' counsel was being rushed at the time he objected to Oliver's comments or that other reasons existed to explain counsel's failure to seek remedial action after his objections were sustained. To the contrary, it appears that counsel had ample opportunity to ask for remedial action at that time. By the end of voir dire, Plaintiffs may have become disenchanted with this jury and moved for mistrial as a matter of trial strategy, not because of perceived prejudice stemming from the objectionable statements. Under the circumstances, Plaintiffs' failure to request a mistrial at the time of his objections may be deemed a waiver or abandonment of that remedy. *McMillin,* 820 S.W.2d at 355[7].

We choose not to rest our conclusions solely on Plaintiffs' failure to preserve the alleged trial court errors for our review. A *gratuitous review* of the merits of Plaintiffs' claims convinces us that the trial court did not abuse its discretion in overruling the motion for a mistrial.

 In "the 'rough and tumble' tactics of trial, zealous counsel may overstep the bounds of propriety in argument," but not every indiscretion should "automatically result in a mistrial." *Gilmore v. Union Constr. Co.,* 439 S.W.2d 763, 766[4] (Mo.1969). Declaration of a mistrial in a civil case is a drastic remedy and should be reserved for only the most grievous of errors where the

prejudice cannot otherwise be removed. *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 208[6] (Mo.banc 1991). The necessity of the drastic remedy of mistrial rests in the sound discretion of the trial court, and absent a manifest abuse of that discretion, appellate courts will not interfere. *Glidewell v. S.C. Management, Inc.,* 923 S.W.2d 940, 956[24] (Mo.App.1996).

 Improper comments made to a jury may be cured, in given circumstances, by withdrawal, reprimand, or admonition, or by an instruction to the jury. *Id.* at 956 (citing *Gilmore,* 439 S.W.2d at 766[6] ). After Plaintiffs made their objections in this case, they never asked the trial court to take any of these intermediate remedial actions. Under the circumstances, Plaintiffs gave the trial court only two options, i.e., treating the prejudice as cured by sustention of the objections or imposing the more drastic remedy of mistrial. Appellate courts in this state have always been reluctant to find an abuse of discretion by a trial court that refuses to declare a mistrial when a mistrial is the only additional remedy sought. *See State v. Carter,* 641 S.W.2d 54, 60–61 (Mo.banc 1982); *State v. Holt,* 660 S.W.2d 735, 737[6] (Mo.App.1983).

Here, the trial court may have concluded that Oliver's remarks, although improper, did not warrant the drastic remedy of mistrial. Such a conclusion was warranted from the fact that the improper remarks came early in the case, were never again alluded to or restated, and any harm done was minimized by opposing counsel's prompt objection. *See Missey v. Kwan,* 595 S.W.2d 460, 462 (Mo.App.1980). The remedial action taken by the court here was sufficient to alleviate any possible prejudicial effect on the jury. *See Id.* at 462. Under the circumstances, we defer to the trial court's evaluation of these incidents. *See Glidewell,* 923 S.W.2d at 956.

In reaching our conclusion we have not ignored the Missouri cases cited by Plaintiffs but we find they simply do not support their position. Thus, in *DeLaporte,* 812 S.W.2d 526, the court granted a new trial, but not based on references to "St. Louis lawyers," as Plaintiffs' brief suggests. Instead, the

case was reversed because of another unrelated assignment of error. The *DeLaporte* court merely cautioned counsel on retrial that "remarks intended to arouse prejudice, not made within the scope of legitimate argument, are improper." *Id.* at 537[36]. In *Gilbert,* 765 S.W.2d 289, the court stated that "references to the size, wealth and corporate status of appellant" are "improper when intended to arouse prejudice and are not within the scope of legitimate argument." *Id.* at 300[27]. Thus, *Gilbert* does not stand for the proposition that Plaintiffs contend, i.e., that appeals to "local prejudices are improper." The prejudicial comments in *Gilbert* came in closing argument, not voir dire. In any event, the *Gilbert* court held that despite counsel's improper remarks, the trial court did not abuse its discretion in denying the motions for mistrial based on these statements. *Id.* at 300[28].

Finally, *Snell,* 307 S.W.2d 716, is not controlling. In *Snell* counsel made numerous prejudicial comments during closing argument. Objections to such comments were overruled, but later the trial court granted a new trial because of the prejudicial remarks made during closing argument. The grant of a new trial was affirmed on appeal. The differences in *Snell* and this case are as follows: In *Snell,* the comments were numerous and egregious, whereas here, there were only two instances. In *Snell,* the remarks came in closing argument, whereas here, they occurred during voir dire. Significantly, in *Snell* the objections to the remarks were overruled, thereby precluding any remedial effect at trial, whereas the objections here were sustained, thereby minimizing any prejudicial effect.

We have also considered Plaintiffs' claim that because of the cumulative effect of Oliver's remarks, the trial court should have ordered a new trial. We find that this claim also lacks merit. Certainly, a new trial can be ordered due to cumulative error, even without deciding whether any single point would constitute grounds for reversal. *See DeLaporte,* 812 S.W.2d at 536[31]. However, cumulative error was not the reason a new trial was ordered in *DeLaporte.* In the other case cited by Plaintiffs, *Giddens v. Kansas City Southern Ry. Co.,* 937 S.W.2d 300 (Mo. App.1996), the Western District affirmed a trial court order granting a new trial based on the cumulative effect of comments made during closing argument. However, the trial court in *Giddens* never had the opportunity to cure the objectionable closing argument comments because no objection to the remarks was made during trial. Thus, the trial court, which was in the far superior position to assess the prejudicial effect of such comments, granted a new trial to correct the situation. On appeal, the Western District merely deferred to the trial court's assessment of the incidents.

As stated earlier, in this case the trial court apparently believed that its sustention of Plaintiffs' objections sufficiently cured any prejudice arising therefrom. We find no abuse of trial court discretion in making that decision. Plaintiffs' points are denied.

The judgment is affirmed.

CROW, P.J., and PARRISH, J., concur.